## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| KAREN EVANS, on behalf of herself and others similarly situated, | : : : | Case No. 17-cv-515 |
| Plaintiff, | : : | |
| v. | : : | **JURY DEMANDED** |
| AMERICAN POWER & GAS, LLC, CONSUMER SALES SOLUTIONS, LLC | : : : : | |
| Defendants. | : | |

## PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM IN SUPPORT

### I.      INTRODUCTION

Plaintiff, Karen Evans ("Plaintiff"), along with the defendants, American Power & Gas, LLC ("AP&G") and Consumer Sales Solutions, LLC's ("CSS") (collectively referred to as the "Defendants" and with Plaintiff referred to as "the Parties"), have reached a class action settlement of this matter.[1] The Settlement includes the establishment of a $6,000,000 Settlement Fund to be distributed *pro rata* to Settlement Class Members who file a valid claim after payment of notice and administration costs (if approved), Plaintiff's Counsel fees and costs (if approved), and an incentive award to the Plaintiff (if approved).[2] There is no reverter in the Settlement Fund. Notice will be effectuated through postcards mailed directly to Settlement Class Members identified in Defendants' records and a website containing the Class Notice (and through which Claim Forms may be directly submitted).

---

[1] Defendants do not oppose this Motion insofar as it supports the proposed settlement. Defendants do not concede or admit Plaintiff's assertions.

[2] All capitalized terms not defined herein have the meanings set forth in the Parties' Class Action Settlement Agreement ("Settlement" or "Agreement"), attached as Exhibit 1.

The Settlement was reached by counsel with a keen understanding of the merits of the claim and extensive experience in actions brought under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. The parties negotiated the Settlement with the assistance of a highly skilled and experienced mediator, which included the exchange of detailed mediation statements. The relief provided meets the applicable standards of fairness when taking into consideration the nature of Plaintiff's claims and the risks inherent in class litigation. Accordingly, Plaintiff respectfully requests that the Court: (1) grant preliminary approval of the Settlement; (2) provisionally certify the proposed Settlement Class; (3) appoint Plaintiff's attorneys as Plaintiff's Counsel; (4) appoint Plaintiff as representative of the Settlement Class; (5) approve the proposed Notice Plan, Notice, and Claim Form; and (6) schedule the Final Approval Hearing and related dates as proposed.  A proposed Preliminary Approval Order is attached as Exhibit 2 and has been lodged with the Court.

## II.    NATURE AND BACKGROUND OF THE CASE

This case rests on alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, which prohibits, *inter alia*, initiating any telephone solicitation to a cell phone using an ATDS or an artificial or prerecorded voice. *See* 47 U.S.C. § 227(b). Plaintiff is an individual residing in Ohio whose cellular telephone number has been called with unsolicited messages for years. On June 14, 2017, Plaintiff filed a putative class action lawsuit against AP Gas & Electric (OH), LLC, AP Gas & Electric (TX), LLC, and AP Holdings, LLC. On August 18, 2017, Plaintiff filed a First Amended Complaint in the action naming American Power & Gas, LLC and Consumer Sales Solutions, LLC as defendants in the Action and also filed a notice of voluntarily dismissal without prejudice as to AP Gas & Electric (OH), LLC, AP Gas & Electric (TX), LLC, and AP Holdings, LLC. On October 3, 2017, the Defendant Parties

filed answers to the First Amended Complaint in the Action, denying any and all liability to Plaintiff and the putative classes and asserting various affirmative defenses.

Between October 2017 and May 2018, the Parties engaged in discovery and other litigation relating to class certification and other issues. During discovery, the parties exchanged documents relating to the dialing system used to make the calls to putative class members, the relationship between the Defendants and their calling practices, and the nature and recipients of the challenged call campaigns of the Defendants. The Plaintiff also retained and produced an expert report from Mr. Jeffrey Hansen to opine that the dialing system used by the Defendants is an ATDS, as defined by the TCPA.

Between May 22, 2018 and August 14, 2018, the Parties engaged in extensive settlement negotiations, including a day-long mediation session with the Honorable Morton Denlow (Ret.) of JAMS in Chicago, Illinois which eventually culminated in the Settlement Agreement before this Court.

## III.     THE PROPOSED SETTLEMENT

### A.     THE SETTLEMENT CLASS

The proposed Settlement would establish a Settlement Class for settlement purposes only, defined as:

> All persons in the United States who were the users or subscribers of a cellular telephone number identified on the Class Phone Number List to which the Defendants, themselves or through a third party, made a telephone call using the ViciDial technology between June 14, 2013 and August 31, 2018.

> Plaintiff and the Defendant Parties agree that the Class Members include only those users or subscribers associated with the 313,285 unique cellular telephone numbers identified on the Class Phone Number List.

(Agreement ¶ 1.37.)

### B.     SETTLEMENT RELIEF

#### 1.     Class Member Relief: Settlement Fund

The proposed Settlement establishes a non-reversionary $6,000,000 Settlement Fund, which will exclusively be used to pay: (1) cash settlement awards to Settlement Class Members; (2) Settlement Administration Expenses; (3) court-approved attorney's fees of up to one-third of the total amount of the Settlement Fund; (4) Plaintiff's out of pocket expenses not to exceed $37,059.65; and (4) a court-approved incentive award to the Class Representative of up to $10,000.

Each Settlement Class Member who submits a valid claim shall be entitled to receive an equal *pro rata* amount of the Settlement Fund after all Settlement Administrative Expenses, Incentive Awards, and Fee awards are paid out of the Settlement Fund. (Agreement. ¶ 3.08). If all the attorneys' fees, expenses, incentive award and Settlement Administration Expenses are approved as requested, Plaintiff's counsel estimate that the average Settlement Class Member payment would be approximately $100. Declaration of Edward A. Broderick.  The Settlement provides for a potential second distribution for any funds remaining due to uncashed settlement distribution checks to those Settlement Class Members that cashed their first distribution checks, to the extent administratively feasible. (Agreement. ¶ 3.09).

#### 2.     Class Representative Incentive Award

If approved by the Court, the Plaintiff will receive an incentive award of $10,000 from the Settlement Fund. (Agreement ¶ 3.08.) This award will compensate Plaintiff for her time and effort and for the risk she undertook in prosecuting this case.

#### 3.     Attorneys' Fees and Costs

If the settlement receives preliminary approval, Plaintiff's Counsel will apply to the Court for an award of attorneys' fees in the amount of up to one-third of the total amount of the Settlement Fund in addition to out of pocket expenses. (Agreement ¶ 2.30.) As Plaintiff's

Counsel will address in their fee application, an award of attorneys' fees and costs will compensate Plaintiff's Counsel for the work already performed in relation to the settled claims, as well as the remaining work to be performed in documenting the Settlement, securing Court approval of the Settlement, making sure the Settlement is fairly implemented, and obtaining dismissal of the action. Plaintiff's proposed attorney fee award (and costs) is plainly disclosed to the Settlement Class in the proposed notice, and wholly consistent with other cases.

### 4.    Remaining Funds

Any amount remaining in the Settlement Fund after paying all approved Claim Forms, Settlement Administration Expenses, and any Fee Award and Incentive Award will be distributed to a Court-approved *cy pres* recipient. The Parties propose Ohio Legal Aid. This will only include the amount remaining from uncashed checks, to the extent further distribution to the Settlement Class is not administratively feasible.

### C.    NOTICE AND SETTLEMENT ADMINISTRATION

All Settlement Administration Expenses will be exclusively paid from the Settlement Fund. (Agr. ¶ 1.33.) The Parties have agreed upon, and propose that the Court approve, the nationally-recognized class action administration firm KKC LLC to be the Settlement Administrator (Agr. ¶ 1.34), to implement the Class Notice, and to administer the Settlement, subject to review by counsel and the Court. The Settlement Administrator's duties will include: (1) sending the Class Notice to the Settlement Class pursuant to the Settlement; (2) responding to inquiries regarding the settlement process from persons in the Settlement Class; (3) processing and evaluating Claim Forms, Requests for Exclusion, and objections; and (4) issuing Benefits Checks and Cash Benefits.

The Settlement Administrator will send Postcard Notice via the U.S. Postal Service— substantially in the form attached as Exhibit C to the Settlement Agreement—to the names and

addresses of Settlement Class Members identified through a combination of the Defendants'
records and a reverse look-up process, the "Class List". (Agreement ¶ 3.01.) The Settlement
Administrator will also update the addresses for the Settlement Class Members using the
National Change of Address ("NCOA") database maintained by the United States Postal Service.
(Agreement ¶ 2.03.) The Settlement Administrator will administer a Settlement Website, through
which Settlement Class Members will be able to submit Claim Forms and obtain further details
and information about the Settlement. (Agreement ¶ 2.05.)

**D.     Opt-Out and Objection Procedures**

Persons in the Settlement Class will have the opportunity to exclude themselves from the
Settlement or object to its approval. (Agreement ¶¶ 2.09, 2.15). The procedures and deadlines for
filing Requests for Exclusion and objections will be conspicuously listed in the Class Notice and
on the Settlement Website. (*See* Agreement at Ex. B-C.) The Class Notice informs Settlement
Class Members that they will have an opportunity to appear and have their objections heard by
this Court at a Final Approval Hearing. (*Id.*) The Notice also informs Settlement Class Members
that they will be bound by the release contained in the Settlement unless they timely exercise
their opt-out right. (*Id.*)

**E.     Release**

The release is appropriately tailored to this case involving alleged violations similar to
those alleged and is limited to those Settlement Class Members identified in the Class List
generated from Defendants' records. In exchange for settlement benefits, the Settlement Class
Members who do not timely opt out of the Settlement will release Defendant from any and all
claims against the Released Parties, arising out of Defendants' automated calling practices using
the ViciDial technology. (Agreement. ¶¶ 4.01-4.03.)

## IV.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

As a matter of public policy, settlement is a strongly favored method for resolving disputes.  This is particularly true in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of prolonged litigation.  *See Rankin v. Rots*, No. 02-CV-71045, 2006 U.S. Dist. LEXIS 45706, at *8-*9 (E.D. Mich. June 28, 2006) ("[T]he Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation."); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 246 (S.D. Ohio 1991) ("The law generally favors and encourages the settlement of class actions.").

Federal Rule of Civil Procedure 23(e)(1) requires court approval of any settlement of a certified class action.  The procedure for approving a class action settlement includes three steps: (1) the court preliminarily approves the settlement; (2) the members of the class then are given notice of the settlement; and (3) the court then holds a hearing to determine whether the settlement is fair, reasonable, and adequate.  *See Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001); *Williams v. Vukovich*, 720 F.2d 909, 921-22 (6th Cir. 1983). With the recent amendment of Rule 23, the Court is additionally required to specifically consider whether the Representative Plaintiff and Class Counsel have adequately represented the Settlement Class in the proceeding to date; the proposed Settlement was negotiated at arm's length; the proposed relief available to the Settlement Class appears to be adequate, taking into account the costs, risks, and delay of trial and appeal; the anticipated effectiveness of the proposed method for distributing the proposed relief available to the Settlement Class, including the proposed method of processing class-member claims; the terms of any proposed award of attorney's fees, including timing of payment, are reasonable, and the

proposed Settlement treats members of the Settlement Class equitably relative to each other. As is set forth below, Plaintiff submits that all of the requirements of Amended Rule 23 are readily met here.

At this juncture, the parties request that the Court grant preliminary approval of the Settlement so that notice may be sent to the Class. The final determination of whether the proposed Settlement is fair, reasonable, and adequate is made only after notice of the Settlement has been given to the members of the Class and after they have been given an opportunity to voice their views regarding the Settlement. *See* 5 James Wm. Moore, *Moore's Federal Practice* §23.83[1], at 23-336.2 to 23-339 (3d ed. 2002).

### A.     The Settlement Is Fair, Reasonable, and Adequate

In determining whether preliminary approval is warranted, the issue before the Court is whether the Settlement: (1) is within the range of what might be found fair, reasonable, and adequate, and (2) does not disclose grounds to doubt its fairness or other obvious deficiencies, such that notice of the proposed Settlement should be given to Class Members and a hearing scheduled to consider final settlement approval. *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 379 (N.D. Ohio 2001); *see also Manual for Complex Litigation* §13.14, at 173 (4th ed. 2004) ("First, the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing.").

"'Preliminary approval of a proposed settlement is based upon the court's familiarity with the issues and evidence, as well as the arms-length nature of the negotiations prior to the proposed settlement, ensuring that the proposed settlement is not illegal or collusive.'" *Miracle*, 2008 U.S. Dist. LEXIS 62603, at *14 (citations omitted). Here, the Settlement was reached after hard-fought litigation and arduous settlement negotiations with the substantial assistance of Hon.

Morton Denlow (Ret.).  The Settlement provides an immediate and substantial benefit of $6,000,000 in cash for the benefit of the Class. Given the complexities of this litigation and the substantial risks of continued litigation, the Settlement represents a very good resolution of this and eliminates the risk that the Class might not recover anything if the litigation were to continue. There is no question that the Settlement is within the range of what has been found fair, reasonable, and adequate, such that notice of the proposed Settlement should be given to Class Members and a hearing scheduled to consider final settlement approval.

### B. Factors Considered in Connection with Final Approval of Class Action Settlements Support Granting Preliminary Approval

Moreover, reference to certain of the factors considered by courts in connection with final approval of class action settlements lend support to the proposition that the Settlement is well within the range of possible approval.  In determining whether a proposed settlement is fair, adequate, and reasonable, the Sixth Circuit and the district courts therein have established factors for a court to consider, including: (1) the plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the risk of fraud or collusion; (4) the stage of the proceedings and the amount of discovery completed; (5) the judgment of experienced trial counsel; (6) the nature of the negotiations; (7) the objections raised by the class members; and (8) the public interest. *Williams*, 720 F.2d at 921; *Telectronics*, 137 F. Supp. 2d at 1008.  Courts have emphasized that these factors should not be applied in a "formalistic" fashion. *Thompson v. Midwest Found. Indep. Physicians Ass'n*, 124 F.R.D. 154, 157 (S.D. Ohio 1988) ("A class action settlement cannot be measured precisely against any particular set of factors, however, and the court may be guided by other factors, 'the relevancy of which will vary from case to case.'") (citation omitted). Here, any objections raised by class members will be after notice is sent and a settlement will be in the public's interest. *See In re Telectronics Pacing Sys.*, 137 F. Supp. 2d

985, 1027 (S.D. Ohio 2001) ("Being a preferred means of dispute resolution, there is a strong

presumption by courts in favor of settlement."). This is especially true in complex class actions

such as this. *See Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). These factors

largely overlap with the additional requirements imposed by Amended Rule 23. The factors are

evaluated below.

> 1. **The plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in the settlement**

The initial factor that courts consider in reviewing a class action settlement is the

likelihood of success on the merits balanced against the amount and form of relief offered in

settlement. *See Williams*, 720 F.2d at 922.  While Plaintiff's counsel believes that the claims

asserted in the litigation have merit, they recognize and acknowledge the expense, length and

uncertainty of continued proceedings necessary to prosecute the litigation against Defendants

through summary judgment, trial and appeals, including the pending appeal of the Court's class

certification order to the Sixth Circuit Court of Appeals.  Plaintiff's Counsel also has taken into

account the uncertain outcome and risk of any litigation, especially in complex actions such as

this Litigation, as well as the difficulties and delays inherent in such litigation.  In addition,

Plaintiff's counsel is mindful of the inherent problems of proof under, and possible defenses to,

the violations asserted in the litigation.  *See In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369,

373-74 (S.D. Ohio 2006) (exploring "the difficulty Plaintiffs would encounter in proving their

claims, the substantial litigation expenses, and a possible delay in recovery due to the appellate

process, provides justifications for th[e] Court's approval of the proposed Settlement").  Apart

from the numerous affirmative defenses asserted in their Answer, Defendants consistently argued

that the dialing system that it used did not qualify as an ATDS, particularly since the recent

decision of the United States Court of Appeals for the District of Columbia in *ACA Int'l v. FCC*,

885 F.3d 687 (D.C. Cir. Mar. 16, 2018) (overturning a 2015 Order from the FCC on the

definition of an Automatic Telephone Dialing System). If the dialing system at issue is not

determined to be an ATDS, the Plaintiff does not have a claim.

In addition, at least some courts view awards of aggregate, statutory damages with

skepticism and reduce such awards — even after a plaintiff has prevailed on the merits — on due

process grounds. *See, e.g., Aliano v. Joe Caputo & Sons – Algonquin, Inc.*, No. 09-910, 2011 WL

1706061, at *4 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory

damages award for willful FACTA violations in this case — between $100 and $1,000 per

violation — would not violate Defendant's due process rights …. Such an award, although

authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see*

*Phillips Randolph Enters., LLC v. Rice Fields*, No. 06-4968, 2007 WL 129052, at *3 (N.D. Ill.

Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th

Amendment does not impose upon Congress an obligation to make illegal behavior affordable,

particularly for multiple violations.").

Moreover, at summary judgment and trial, many of the determinative issues would be

subject to expert testimony. While Plaintiff had retained a highly qualified expert, there is no

telling which expert's testimony the Court or jury would accept. *See Connectivity Sys. Inc. v.*

*Nat'l City Bank*, No. 2:08-cv-1119, 2011 U.S. Dist. LEXIS 7829, at *6 (S.D. Ohio Jan. 26, 2011)

("Acceptance of expert testimony is always far from certain, no matter how qualified the expert,

inevitably leading to a 'battle of the experts.'  The Settlement Agreement reached by the parties

avoids the risks attendant to this 'battle of the experts,' which could result in a ruling against

Named Plaintiffs and the Settlement Class.").

### 2.      The complexity, expense, and likely duration of the litigation.

Litigation would be lengthy and expensive if this action were to proceed. Although the Parties have engaged in substantial discovery, extensive motion work, including finishing the briefing of class certification and motions for summary judgment, remain. Realistically, it could be more than a year before the case would proceed to trial. The appeals process may further delay any judgment in favor of Settlement Class Members. The Settlement avoids these risks and provides immediate and certain relief. *See, e.g.*, *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 318 (3d Cir. 1998) (settlement was favored where "the trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court"); *In re Enron Corp. Sec.*, 228 F.R.D. 541, 566 (S.D. Tex. 2005) ("The settlement at this point would save great expense and would give the Plaintiffs hard cash, a bird in the hand.").

### 3.      The risk of fraud or collusion and the nature of negotiations.

First, the terms of the Settlement are the product of extensive arm's-length negotiations between the parties, with the substantial assistance of Judge Denlow. Between May 22, 2018 and August 14, 2018, the Parties engaged in extensive settlement negotiations, including a day-long mediation session. During these negotiations, Plaintiff's counsel zealously advanced their position and were fully prepared to continue to litigate rather than accept a settlement that was not in the best interest of the Settlement Class. Defendants are represented by highly capable and experienced lawyers from a national law firm. Counsel for Defendants zealously represented Defendants during the settlement negotiations and throughout the litigation. The Settlement was reached only after extensive arm's-length negotiations by experienced counsel on both sides, each with a well-developed understanding of the strengths and weaknesses of each party's respective claims and defenses.  Indeed, Plaintiff's counsel carefully considered and evaluated a

number of factors, including the relevant legal authorities and evidence pertaining to the claims

asserted against Defendants, the likelihood of prevailing on these claims, the risk, expense and

duration of continued litigation, and any appeals and subsequent proceedings.  After considering

these factors, Plaintiff's Counsel reasonably concluded that the Settlement is not only fair,

reasonable, and adequate but is a very good result for the Settlement Class.

### 4. The stage of the proceedings and the amount of discovery completed.

Additionally, the stage of the proceedings supports approval of the Settlement.

*Telectronics*, 137 F. Supp. 2d at 1015.  By the time the Settlement was reached Plaintiff's

Counsel had sufficient knowledge and a significant understanding of the merits of the claims

alleged in the litigation and the defenses that would be asserted by Defendants to intelligently

determine that the settlement is in the best interest of the Settlement Class.  Here, fact discovery

was nearly complete. The Plaintiff had retained an expert and provided a report. Plaintiff and her

counsel's vigorous representation of the putative class readily satisfies the requirement of

Amended Rule 23(e) of adequate representation of the proposed Settlement Class.

In addition, the Parties participated in an arms-length mediation with Judge Denlow

where the strengths and weaknesses of the claims asserted were fully vetted. Prior to the

mediations, the parties exchanged detailed mediation statements which further highlighted the

factual and legal issues in dispute. The "arms-length" negotiation requirement of Amended Rule

23(e) is also satisfied.

### 5. The judgment of experienced trial counsel.

Plaintiff's counsel has significant experience and expertise in TCPA and other complex

class action litigation and has negotiated numerous other substantial class action settlements

throughout the country and they support the Settlement.  *See Declarations of Brian Murphy,*

*Edward A. Broderick, Matthew P. McCue and Samuel Strauss,* attached hereto as Exhibits 3 to 6

respectively. The Sixth Circuit has determined that a court should "defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs." *See Williams*, 720 F.2d at 922-23; *Telectronics*, 137 F. Supp. 2d at 1015 ("The Court heeds the recommendation of such experienced, professional, and competent Counsel."); *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532 (E.D. Ky. 2010) ("In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference."), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011).

Based on their thorough evaluation, Plaintiff's counsel believes the benefits of Settlement merit approval, particularly when weighed against the expense, risks and uncertainty of continued litigation. While there is always a chance of a greater recovery down the road, such a result is by no means guaranteed, and any such expectation must be tempered by a recognition that any compromise involves concessions on the part of all Parties. Indeed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citations omitted). As the Fifth Circuit noted in *Cotton v. Hinton*, "[t]he trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained . . . .'" 559 F.2d 1326, 1330 (5th Cir. 1977) (citation omitted).

In light of the risks of continued litigation laid out above, and the determination of experienced counsel that the settlement represents an excellent result for the class, Plaintiff's counsel respectfully submit that the proposed settlement meets the requirement of Amended Rule

23(e) that the proposed relief be found adequate, taking into account the costs, risks and delay of trial and appeal.

## V.     THE PROPOSED NOTICE AND FUND DISTRIBUTION PROGRAM IS APPROPRIATE

Rule 23(e) governs notice requirements for settlements or "compromises" in class actions.  The Rule provides that a class action shall not be dismissed or compromised without the approval of the court and that notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.  Fed. R. Civ. P. 23(e).  In addition, the Rule provides, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).

Here, the Parties have negotiated the content of the Notice of Pendency and Proposed Settlement of Class Action (the "Notice") to be disseminated to all persons who fall within the definition of the Class and whose names and addresses can be identified. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). According to the Manual for Complex Litigation, § 21.312, a settlement notice should do the following:

- Define the class;

- Describe clearly the options open to the class members and the deadlines for taking action;

- Describe the essential terms of the proposed settlement;

- Disclose any special benefits provided to the class representatives;

- Indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;

- Explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations;

- 15 -

- Provide information that will enable class members to calculate or at least estimate their individual recoveries; and

- Prominently display the address and phone number of class counsel and the procedures for making inquiries.

The proposed Class Notice, attached as Exhibits B and C to the Settlement Agreement, satisfy all of the above criteria. The Notice describes the nature of the Litigation; sets forth the definition of the Class; states the Class claims; and discloses the right of Class Members to exclude themselves from the Class, as well as the deadline and procedure for doing so and warns of the binding effect of the settlement approval proceedings on Class Members who do not exclude themselves.  In addition, the Notice describes the Settlement; sets forth the Settlement Fund, explains the distribution and claims process; states the parties' disagreement over damages and other issues; sets out the amount of attorneys' fees and expenses that Plaintiff's Counsel intends to seek in connection with final settlement approval. The Notice also provides contact information for Plaintiff's Counsel and the Claims Administrator, and summarizes the reasons the Parties are proposing the Settlement.  The Notice also discloses the date, time, and place of the formal fairness hearing, and the procedures for objecting to the Settlement and appearing at the hearing.  The contents of the Notice therefore satisfy all applicable requirements. In addition, the Settlement Agreement calls for distribution of Benefit Checks within 30 business days after the Final Approval Date. Settlement Agreement ¶ 3.03.

All Settlement Class members that submit timely and valid claim forms will be entitled to an equal payment made by a Settlement administrator experienced and proficient in administering class settlements, thereby satisfying the twin requirements of Amended Rule 23(e) that the method for distribution of payments be effective, and that the proposed settlement treat Settlement Class members equitably relative to each other.

## VI.     SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must set a final approval hearing date, dates for mailing and publication of the Notice and Summary Notice and deadlines for objecting to the Settlement, opting out of the Class, and filing papers in support of the Settlement.  The Parties propose the following schedule:

| | |
|---|---|
| Notice and the Proof of Claim and Release mailed to Class and Published on the Website ("Notice Date") | Within 30 days of Entry of Preliminary Approval |
| Objection and Claim Deadline | 21 days in advance of final approval hearing |
| Deadline for Application for Attorney's Fees and Costs and Class Representative Award | 35 Days in Advance of Final Approval Hearing |
| Deadline for filing papers in support of final approval of the Settlement. | 7 Days in advance of Final Approval Hearing |
| Final Approval Hearing | At the Court's convenience at least 120 days after the Notice Date |

## VII.   CONCLUSION

For the reasons set forth above and the entire record in this litigation, the Settlement warrants this Court's preliminary approval, and Plaintiff's Counsel respectfully requests that the motion be granted.

PLAINTIFF,
By his attorneys

*/s/ Brian K. Murphy*
JB Hadden
Brian K. Murphy (6225697)
Jonathan Misny
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH  43215
(614) 488-0400
(614) 488-0401 facsimile
murphy@mmmb.com

Edward A. Broderick
Anthony I. Paronich
Broderick & Paronich, P.C.
99 High St., Suite 304
Boston, MA 02110
(617) 738-7080
ted@broderick-law.com
anthony@broderick-law.com

<u>CERTIFICATE OF SERVICE</u>

I, hereby certify that on December 10, 2018, I caused the foregoing to be filed via the Court CM/ECF filing system which will effect service on all counsel of record.

*/s/ Brian K. Murphy*
Brian K. Murphy