**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KAREN EVANS, on behalf of herself and others similarly situated, | : | Case No. 2:17-cv-515 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Judge Edmund A. Sargus |
| | : | |
| AMERICAN POWER & GAS, LLC, CONSUMER SALES SOLUTIONS, LLC | : | Magistrate Judge Elizabeth Preston Deavers |
| | : | |
| Defendants. | : | |

## PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES, AND CLASS REPRESENTATIVE AWARD

## I.    INTRODUCTION

Plaintiff, Karen Evans ("Plaintiff"), along with the Defendants, American Power & Gas, LLC ("AP&G") and Consumer Sales Solutions, LLC ("CSS") (collectively referred to as the "Defendants" and with Plaintiff referred to as the "Parties"), have reached a class action settlement of this matter, for which the Court granted preliminary approval on December 14, 2019, Doc. 58.

Plaintiff submits this memorandum to separately address her request for a class representative award, as well as an award of attorneys' fees and expenses.  The Settlement includes the establishment of a $6,000,000 Settlement Fund to be distributed *pro rata* to Settlement Class Members who file a valid claim after payment of notice and administration costs (if approved), Plaintiff's Counsel fees and costs (if approved), and an incentive award to the Plaintiff (if approved).[1]  No part of the Settlement Fund will revert to the Defendants.

For the reasons set forth below, Plaintiff respectfully submits that her requested class representative award of $10,000, an attorneys' fee award of one-third of the Settlement Fund, and an award of $37,059.65 in expenses is well justified in light of the excellent result achieved for the Settlement Class under applicable Supreme Court and Sixth Circuit precedents.

## II.    NATURE AND BACKGROUND OF THE CASE

This case rests on alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, which prohibits, *inter alia*, initiating any telephone solicitation to a cell phone using an "automatic telephone dialing system" ("ATDS") or an artificial or prerecorded voice.  *See* 47 U.S.C. § 227(b).  Plaintiff is an individual residing in Ohio whose cellular telephone number has been called with unsolicited messages for years.  On June 14,

---

[1] All capitalized terms not defined herein have the meanings set forth in the Parties' Class Action Settlement Agreement ("Settlement" or "Agreement"), filed at Doc. 57-1.

2017, Plaintiff filed a putative class action lawsuit against AP Gas & Electric (OH), LLC, AP Gas & Electric (TX), LLC, and AP Holdings, LLC.  On August 18, 2017, Plaintiff filed a First Amended Complaint in the action naming American Power & Gas, LLC and Consumer Sales Solutions, LLC as Defendants in the action and also filed a notice of voluntarily dismissal without prejudice as to AP Gas & Electric (OH), LLC, AP Gas & Electric (TX), LLC, and AP Holdings, LLC.  On October 3, 2017, the Defendants filed answers to the First Amended Complaint in the action, denying any and all liability to Plaintiff and the putative classes and asserting various affirmative defenses.

Between October 2017 and May 2018, the Parties engaged in discovery and other litigation relating to class certification and other issues.  During discovery, the parties exchanged documents relating to the dialing system used to make the calls to putative class members, the relationship between the Defendants and their calling practices, and the nature and recipients of the challenged call campaigns of the Defendants.  The Plaintiff also retained and produced an expert report from Mr. Jeffrey Hansen to opine that the dialing system used by the Defendants is an ATDS, as defined by the TCPA.

The resolution of this action required two all-day mediations.  The first was with nationally-recognized mediator Peter Grilli, Esq. in Tampa, Florida.  Although the mediation did not result in a settlement, the parties continued to negotiate and agreed to a second mediation on August 14, 2018 with the Honorable Morton Denlow (Ret.), a former United States Magistrate Judge with JAMS in Chicago, Illinois, which culminated in the Settlement Agreement before this Court.

The proposed Settlement establishes a non-reversionary $6,000,000 Settlement Fund, which will exclusively be used to pay: (1) cash settlement awards to Settlement Class Members; (2) Settlement Administration Expenses; (3) court-approved attorneys' fees of up to one-third of

the total amount of the Settlement Fund; (4) Plaintiff's out-of-pocket expenses not to exceed

$37,059.65; and (4) a court-approved incentive award to the Class Representative of up to

$10,000.

Each Settlement Class Member who submits a valid claim shall be entitled to receive an

equal *pro rata* amount of the Settlement Fund after all Settlement Administrative Expenses,

Incentive Awards, and Fee awards are paid out of the Settlement Fund.  (Agreement, ¶ 3.08).  If

all the attorneys' fees, expenses, incentive award, and Settlement Administration Expenses are

approved as requested, Plaintiff's counsel estimate that the average Settlement Class Member

payment would exceed $100.  The Settlement provides for a potential second distribution for any

funds remaining due to uncashed settlement distribution checks to those Settlement Class

Members that cashed their first distribution checks, to the extent administratively feasible. (*Id.*, ¶

3.09; Doc. 57-1.)

## III.    ARGUMENT

### A.    The attorneys' fees and costs are reasonable.

Compensating counsel for the actual benefits conferred on the class members must be the

fundamental consideration in awarding attorneys' fees, as a court is attempting to award counsel

for the result achieved.  *See Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516-17 (6th

Cir. 1993).  An attorney who creates a "common fund" or "substantial benefit" allocable with

some exactitude to a definite group of persons acquires an equitable claim against that group for

the costs incurred in creating the fund or benefit.  *Sprague v. Ticonic Nat'l. Bank*, 307 U.S. 161

(1939); *Trustees v. Greenough*, 105 U.S. 527 (1882).  Historically, the rationale entitling counsel

to a percentage of the common fund derives from the equitable powers of the courts under the

doctrines of quantum meruit, *Central R.R. & Banking Co. of Georgia v. Pettus*, 113 U.S. 116,

124 (1885); unjust enrichment, *see, e.g., Greenough*, 105 U.S. at 532-33; and later, what has

become known as the "substantial" or "common benefit" doctrine. *See Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 392-94 (1970). All of these doctrines now fall under the larger umbrella of the "common fund" doctrine. Under the common fund doctrine, fee reimbursement is permitted in the following circumstances: (1) when litigation indirectly confers substantial monetary or non-monetary benefits on members of an ascertainable class, and (2) when the court's jurisdiction over the subject matter of the suit, and over a named party who is a collective representative of the class, makes possible an award that will operate to spread the costs proportionately among class members. H. Newberg, Attorney Fee Awards, § 2.01, at 28-29 (1986).

Such cases as this one, therefore, are called "common benefit" or "common fund" cases, and "[i]t is well-settled that a lawyer who recovers a common fund for the benefit of a class of persons in commercial litigation is entitled to reasonable attorneys' fees and expenses payable from that fund." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980); *Mills*, 396 U.S. at 391-92. And, as the Supreme Court has explained, in contrast to a statutory fee shifting where fees are calculated "under the common fund doctrine … a reasonable fee is based on *a percentage of the fund bestowed upon the class*." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). The Sixth Circuit follows the other circuits in finding that a court award of attorneys' fees in a class action may be based on a "percentage of the fund" created by counsel.[2] *See Rawlings*, 9 F.3d at 516-17 (court may apply either "percentage of fund award" or "lodestar method"). Against this backdrop, "[t]o avoid depleting the funds available for distribution to the class, an upper limit of 50% of the fund may be stated as a general rule, although even larger

---

[2] Fee awards are of course entirely up to the discretion of this Court. Class Counsel appreciates this fact; the Court can award a lower fee if that is what it concludes is fair, and even engage in an extensive "lodestar" inquiry if it believes that is the analysis it prefers. *Rawlings*, 9 F.3d at 516.

percentages have been awarded." *Camden I Condo. Ass'n v. Dunkle,* 946 F.2d 768, 774-75 (11th Cir. 1991) (citing H. Newberg, Attorney Fee Awards, § 2.01 at 28-29 (1986)).  Indeed, in Ohio, the typical contingency fees paid fall between 30 and 40%.  (Declaration of Brian K. Murphy ("Murphy Decl."), attached hereto as Exhibit 1, ¶ 5.)

In analyzing the reasonableness of a fee award, the United States Supreme Court and Sixth Circuit have adopted the "*Johnson* Factors" first set forth by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974).  *See Blanchard v. Bergeron,* 489 U.S. 87, 91 n.5 (1989) (citing *Johnson*) and *Paschal v. Flagstar Bank,* 297 F.3d 431, 434-35 (6th Cir. 2002).  The *Johnson* Factors are*:* (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved [14] and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Johnson*, 488 F.2d at 717-19.  As is set forth below, under each of the *Johnson* Factors, Plaintiff's requested attorneys' fees are reasonable and should be awarded.

**B.**     **The *Johnson* Factors support Class Counsel's request for an award of attorneys' fees.**

The *Johnson* Factors were developed in the statutory fee context, and "the inherent differences between statutory fee and common fund cases could justify a trial judge's decision to assign different relative weights to those factors in the two types of cases." *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 456 (10th Cir. 1988).  Moreover, "[r]arely are all of the *Johnson* factors applicable; this is particularly so in a common fund situation." *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993).  In a common fund case, "the

amount involved … and the results obtained may be given greater weight when, as in this case, the trial judge determines that the recovery was highly contingent and that the efforts of counsel were instrumental in realizing recovery on behalf of the class." *Brown* at 456.  In other words, the "'time and labor involved' factor need not be evaluated using the lodestar formulation when, in the judgment of the trial court, a reasonable fee is derived by giving greater weight to other factors, the basis of which is clearly reflected in the record." *Id*.

### 1. The time and labor required to resolve this matter were significant.

This case is nearly two years old.  Over those nearly two years, Class Counsel has expended a significant amount of time to reach the Settlement at bar.  They have completed discovery.  They have reviewed expert reports.  And they have extensively mediated the case. Class Counsel's time and labor involved in reaching the ultimate resolution of this matter were extensive as was necessary to achieve such a positive outcome.  Defendants were represented by skilled counsel with a long history of significant TCPA actions.

Not surprisingly, and perhaps most tellingly, not one Settlement Class Member has raised an objection to the cost and fee award proposed here, despite the class notices explicitly advising of both the percentage and amount of the fees requested.  Accordingly, this factor supports the reasonableness of the cost and fee request.

### 2. The questions underlying this matter were both difficult and novel.

This matter involved many legal questions, most of which were difficult, and several of which were novel.  This is evidenced, if by nothing more, than the variety of defenses that Defendants asserted.  First, as discussed above, even with a total victory for the Plaintiff, a jury had the option of awarding a wide range of damages on Plaintiff's Do Not Call count, all the way "up to $500."  Defendants additionally maintained that Plaintiff had not suffered an "injury in fact" within the meaning of *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).  This would have

eliminated Plaintiff's claims.  *Compare Rogers v. Capital One Bank (USA), N.A.*, No. 1:15-CV-4016-TWT, 2016 WL 3162592, at *2 (N.D. Ga. June 7, 2016) (plaintiff had standing to pursue claims under the TCPA for unwanted telephone calls to her cellular telephone number), *with Romero v. Dep't Stores Nat'l Bank*, No. 15-CV-193-CAB-MDD, 2016 WL 4184099 (S.D. Cal. Aug. 5, 2016) (plaintiff did not have standing to assert claims under the TCPA based on telephone calls she was not aware of, telephone calls she heard but did not answer, or telephone calls she answered).  Consequently, whether a TCPA plaintiff who seeks only statutory damages has standing under Article III is a novel question as of the date the parties reached a settlement here and remains a contested question that would be presented on appeal.  Similarly, Defendants (wrongly but vociferously) asserted that they had the option of mooting Plaintiff's claims through an individual offer of judgment, asserting that *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016) left open that possibility.  Some post-*Gomez* courts have held (albeit wrongly) that even a plaintiff who rejects a settlement offer can have a case dismissed by virtue of an adverse judgment entered by the court.  *See, e.g., Fulton Dental, LLC v. Bisco, Inc.*, No. 15 C 11038, 2016 U.S. Dist. LEXIS 118658 *64-65 (N.D. Ill. Sept. 2, 2016) (allowing deposit of funds and entering judgment for defendant).

In short, many of the issues underlying this matter involve difficult and unsettled legal questions, which are at the forefront of class action, constitutional, and consumer protection law.

### 3. Class Counsel relied on particular skill and experience in performing the legal services required.

"[T]he prosecution and management of a complex national class action requires unique legal skills and abilities."  *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-CV-3066-JEC, 2012 WL 12540344, at *4 (N.D. Ga. Oct. 26, 2012) (internal citation omitted).  This action is no different, and Class Counsel relied on their particular skill in litigating and

negotiating a settlement in this matter.  As is attested to in the Declarations of Class Counsel filed as Docs. 57-3 through 57-6, collectively, Class Counsel have been involved in many major TCPA litigations and class action settlements.  In fact, counsel for the Plaintiff was on a trial team that conducted the only trial of a certified class action in a TCPA case in federal court, which resulted in a $20,446,400 verdict for approximately 18,000 class members after a five-day trial.  *See Krakauer v. Dish Network, L.L.C.*, No. 1:14-CV-333, Doc. 292 (M.D.N.C. Sept. 9, 2015).  This is the only TCPA class action jury trial that has tried to verdict.

### 4.  Acceptance of this matter precluded Class Counsel from taking on other employment.

"[S]ubstantial and concentrated time investment by plaintiffs' counsel would tend to preclude other lucrative opportunities, thus warranting a higher percentage of the fund." *Columbus Drywall*, 2008 WL 11234103, at \*2; *see also Yates v. Mobile Cnty. Pers. Bd.*, 719 F.2d 1530, 1535 (11th Cir. 1983).

This is the case here, as Class Counsel have expended nearly two years to ultimately obtain the results they achieved for the class.  *See* Declarations of Class Counsel filed as Docs. 57-3 through 57-6.  Accordingly, this factor weighs strongly in favor of the fee request.

### 5.  The customary fee.

As noted above, the customary percentage fee in contingent fee cases in Ohio is between 30-40%.  (Murphy Decl., ¶ 5.)  This is consistent with contingent fee arrangements nationwide. The leading empirical study shows that while a majority (57%) of contracts employ a flat fee of 33.3%, those that use a variable rate structure apply fees of up to 50% in cases that are tried or taken up on appeal.  Herbert M. Kritzer, *Seven Dogged Myths Concerning Contingency Fees*, 80 Wash. U. L. Q. 739, 758 (2002).

### 6.  Class Counsel litigated this matter on a contingent basis.

"Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award." *Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992). Notably, the risk taken by Class Counsel here was real, as opposed to hypothetical. Both *Gomez* and *Spokeo* could have led to no recovery. Furthermore, as discussed above, the risk of complete victory secured by the Plaintiff would be tempered by the fact that a jury could award any amount of damages for the violative calls. With this in mind, a court in the Southern District of Florida observed:

> A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens v. Wometco Enters, Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) (internal citation omitted).

These risks are not merely hypothetical—Class Counsel have experienced them firsthand in other TCPA cases. *See, e.g.*, *Childress v. Liberty Mut. Ins. Co.*, No. 17-CV-1051 MV/KBM, 2018 U.S. Dist. LEXIS 167281 (D.N.M. Sept. 28, 2018) (granting motion to dismiss); *Johansen v. Nat'l Gas & Elec. LLC*, No. 2:17-cv-587, 2018 U.S. Dist. LEXIS 138785 (S.D. Ohio Aug. 16, 2018) (granting motion to dismiss); *Fabricant v. United Card Solutions LLC*, No. 2:18-cv-01429, Doc. 34 (C.D. Cal. July 24, 2018) (denying class certification); *Naiman v. TranzVia LLC*, No. 17-cv-4813-PJH, 2017 U.S. Dist. LEXIS 199131 (N.D. Cal. Dec. 4, 2017) (granting motion to dismiss); *Donaca v. Dish Network, LLC.*, 303 F.R.D. 390 (D. Colo. 2014) (denying class certification); *Fitzhenry v. ADT Corp.*, No. 14-80180-MIDDLEBROOKS/BRAN, 2014 U.S. Dist. LEXIS 166243 (S.D. Fla. Nov. 3, 2014) (denying class certification); *Brey Corp. v. LQ Mgmt. LLC*, No. - JFM-11-718, 2014 U.S. Dist. LEXIS 11223 (D. Md. Jan. 29, 2014) (denying

- 9 -

class certification); *Mey v. Pinnacle Sec., LLC*, No. 5:11CV47, 2012 U.S. Dist. LEXIS 129267 (N.D.W. Va. Sept. 12, 2012) (granting summary judgment).

That the attorneys' fee arrangement in this case was contingent "weighs in favor of the requested attorneys' fees award, because '[s]uch a large investment of money [and time] place[s] incredible burdens upon … law practices and should be appropriately considered.'" *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1256 (D.N.M. 2012); *see also Allapattah Servs., Inc.*, 454 F. Supp. 2d 1185, 1215 (S.D. Fla. 2006) ("This factor weighs heavily in favor of a 31 and 1/3% percentage fee for Class Counsel because the fee in this action has been completely contingent.").

### 7.  Class Counsel obtained an excellent result.

"The most important element in determining the appropriate fee to be awarded class counsel out of a common fund is the result obtained for the class through the efforts of such counsel." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 351; *see also Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 693 (M.D. Ala. 1988) ("The critical element in determining the appropriate fee to be awarded class counsel out of a common fund is the result obtained for the class through the efforts of such counsel."); *accord Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1342 (S.D. Fla. 2007) ("The result achieved is a major factor to consider in making a fee award.").

Here, in the face of many significant legal hurdles discussed above, Class Counsel obtained an excellent result for the class.  The Settlement compares quite favorably, on a per-class member basis, to similar TCPA class action settlements that courts have recently approved. This per-claimant payout vastly exceeds many other court-approved TCPA settlements and represents an excellent result for class members.  *See Manouchehri v. Styles for Less, Inc.*, No. 14-cv-2521 NLS, 2016 WL3387473, at *2, 5 (S.D. Cal. June 20, 2016) (preliminarily approving

settlement where class members could choose to receive $10 cash or $15 voucher); *Franklin v. Wells Fargo Bank, N.A.,* No. 14cv2349-MMA (BGS), 2016 WL 402249 (S.D. Cal. Jan. 29, 2016) (approving settlement where class members received $71.16); *Estrada v. iYogi, Inc.*, No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (preliminarily approving TCPA settlement where class members estimated to receive $40); *Cubbage v. Talbots, Inc.*, No. 09-cv-00911-BHS, Doc. 114 (W.D. Wash. Nov. 5, 2012) (finally approving TCPA settlement where class members would receive $40 cash or $80 certificate); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, Doc. 96 at ¶ 6 (N.D. Cal. Mar. 10, 2014) (claimants received $46.98 each); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Doc. 137 (S.D. Cal. Sept. 28, 2012) (claimants received $40 each); *Desai v. ADT Sec. Servs., Inc.*, No. 1:11-cv-01925, Doc. 229 (N.D. Ill. Feb. 14, 2013) (estimating claimants would receive between $50 and $100); *Garret v. Sharps Compliance, Inc.*, No. 1:10-cv-04030, Doc. 65 (N.D. Ill. Feb. 23, 2012) (claimants received between $27.42 and $28.51). *See also In re Enhanced Recovery Co.*, No. 13-md-2398-RBD-GJK, Doc. 123 at 1 (only injunctive relief for class) and Doc. 124 (settlement granted final approval) (M.D. Fla. July 29, 2014); *Grant v. Capital Mgmt. Servs.*, No. 10-cv-2471, 2014 U.S. Dist. LEXIS 29836, at *10 (S.D. Cal. Mar. 5, 2014) (injunctive relief only – no monetary relief to the class).

The Settlement here provides Settlement Class Members with real monetary relief, despite the purely statutory damages at issue—damages that courts have deemed too small to incentivize individual actions. *See, e.g.*, *Palm Beach Golf Center-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 699 (S.D. Fla. 2015) (noting that the small potential recovery in individual TCPA actions reduced the likelihood that class members will bring suit). This means that because of the Settlement at hand, tens of thousands of individuals are entitled to relief they otherwise would likely never have pursued on their own. In sum, for a variety of reasons, the Settlement here

represents an objectively excellent recovery for the class and is overwhelmingly in support of the requested fee.

### 8. Time limitations imposed by the client or circumstances.

A central issue in this case, whether the dialing system employed in this case qualified as an ATDS as defined by the TCPA, is an issue of significant debate throughout the life of this case, and one on which the Federal Communications Commission ("FCC") is currently soliciting public comment:

> With this Public Notice, we seek further comment on one issue related to interpretation and implementation of the Telephone Consumer Protection Act (TCPA),1 following the recent decision of the U.S. Court of Appeals for the Ninth Circuit in Marks v. Crunch San Diego, LLC.  We seek comment here to supplement the record developed in response to our prior Public Notice seeking comment on the U.S. Court of Appeals for the D.C. Circuit's opinion in ACA International v. FCC.

 https://www.consumerfinancemonitor.com/wp-content/uploads/sites/14/2018/10/DA-18-1014A1.pdf (footnotes omitted, last visited March, 2019).

The heart of the debate is whether an ATDS had to itself generate numbers to be called or could automatically dial from a list of numbers.  In *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018), the Court of Appeals for the District of Columbia invalidated the FCC's 2015 Declaratory Ruling and its expansive definition of an ATDS, but left considerable debate as to what constituted an ATDS going forward, particularly whether the FCC's prior pronouncements as to what constitutes an ATDS still stand.  *Compare Pieterson v. Wells Fargo Bank, N.A.*, No.17-cv-02306-EDL, 2018 U.S. Dist. LEXIS 113125, 2018 WL 3241069, at *3 (N.D. Cal. July 2, 2018) ("*ACA Int'l* vacated the 2015 Declaratory Ruling but it did not clearly intend to disturb the FCC's 2003 and 2008 orders.") *with Roark v. Credit One Bank, N.A.*, Civ. No. 16-173 (PAM/ECW), 2018 U.S. Dist. LEXIS 193252, 2018 WL 5921652, at *2-3 (D. Minn. Nov. 13, 2018) (rejecting plaintiff's argument "that *ACA Int'l* has no bearing on previous

FCC rulings that determined that predictive dialing systems are autodialers").  If the Court had

adopted the view that the FCC's pronouncements on the definition of an ATDS were

invalidated by *ACA Int'l*, Plaintiff was at risk of losing on summary judgment as to the

autodialed calls count.  *See, e.g., Thompson-Harbach v. USAA Fed. Sav. Bank*, No. 15-CV-

2098-CJW-KEM, 2019 U.S. Dist. LEXIS 3687, at *42-43 (N.D. Iowa Jan. 9, 2019) ("The

Court therefore finds that defendant did not violate the TCPA by calling plaintiff simply by

using equipment to store and call the number that plaintiff gave defendant.  The critical missing

feature that would have brought the device within the scope of the TCPA is the capacity to

randomly or sequentially produce or store a number and then call that number.").

Moreover, if the result of the FCC's current rulemaking process (begun on May 13,

2018) is an alteration in the definition of what constitutes an ATDS, Plaintiff and the class

would be further at risk of recovering nothing for autodialer violations.  Thus, the Settlement

was achieved under significant time pressure due to a possible ruling by the FCC.

### 9.  Experience, reputation and ability of the attorneys.

Despite the challenges involved, Class Counsel were able to pursue this case effectively

because of their experience prosecuting TCPA class actions.  Class Counsel have litigated

dozens of TCPA cases—achieving a successful outcome in many, but losing some.  This depth

of experience with TCPA claims and class action litigation allowed Class Counsel to position the

case for successful resolution and to negotiate a Settlement that capitalized on the claims'

strengths while eliminating the risks of continued litigation.

Those who have had the most opportunity to observe their work have found Class

Counsel to be effective and efficient.  Most of Class Counsel served on a lean team that

prosecuted one of the only trials of a certified TCPA class action in federal court.  The result was

a $61 million award for the class.  *Krakauer v. Dish Network, L.L.C.*, No. 1:14-CV-333, 2018

U.S. Dist. LEXIS 203725, at *2 (M.D.N.C. Dec. 3, 2018).  The court in that trial had extensive visibility into counsel's skill and efficiency.  It noted that Class Counsel had just two lawyers who handled all witnesses and argument, three lawyers who supported the trial team, no paralegal, and no technical support staff. *Id.* at *15.  The court lauded that efficiency and approved a 33% fee award. *Id.* at *15-16.

"The quality of opposing counsel is also relevant to the quality and skill that class counsel provided." *Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 U.S. Dist. LEXIS 17196, at *59 (N.D. Cal. Feb. 11, 2016) (collecting cases).  Defendants' lead counsel is Brooks Brown, Esq., a partner with Goodwin Proctor, LLP, along with his associate W. Kyle Tayman, Esq.  Goodwin Proctor is one of the leading defense firms in the country.  Defendants were also represented by three additional experienced defense firms: Tucker Ellis, LLP, Harris Beach PLCC, and Steptoe & Johnson, PLLC.  The "risks of class litigation against an able defendant well able to defend itself vigorously" support an upward adjustment in the fee award. *Lofton v. Verizon Wireless (VAW) LLC*, No. C 13-05665 YGR, 2016 U.S. Dist. LEXIS 186812, at *4 (N.D. Cal. May 27, 2016); *accord Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 U.S. Dist. LEXIS 11149, at *16 (N.D. Cal. Feb. 2, 2009) (where defense counsel "understood the legal uncertainties in this case, and were in a position to mount a vigorous defense," the favorable settlement was a "testament to Plaintiffs' counsel's skill").

**10. This matter was undesirable to many attorneys.**

No other lawyers were willing to file this case.  That Class Counsel faced the prospect of (and had to) work for nearly two years to ultimately obtain the Settlement now at issue, in the face of the debate before the FCC on autodialers, made this matter undesirable to many. *See Columbus Drywall*, 2008 WL 11234103, at *4 (explaining that the prospect of expending significant time and money with no assurance of payment, to litigate a case against well-

represented defendants, would deter many lawyers from assuming representation).  So
although Class Counsel ultimately obtained a result that any attorney should be proud of, the
road leading to a resolution here was paved with commitment of resources that would deter
many attorneys from accepting this matter.  And this is especially true given the quality of legal
representation that Defendants retained.

### 11. The nature and length of the professional relationship with the client.

Plaintiff Karen Evans is a first-time class plaintiff that took on the task of representing
a putative class, rather than simply seeking to recover for her individual damages.  Prior to this
case, she had never been represented by Class Counsel.  That Class Counsel were able to win
her trust to represent her and guide her through the process of serving as a class representative
bolsters Class Counsel's entitlement to fees as serving as a class representative is not without
risk as some TCPA defendants have not hesitated to assert counterclaims.  *See* [ ].

### 12. The requested fee is consistent with awards in TCPA settlements.

Class Counsel's request for an award of attorneys' fees of 33 1/3% of the common fund
is well within the range of fee awards in numerous TCPA cases.  *See, e.g.*, *Gaskill v. Gordon*,
160 F.3d 361, 362–63 (7th Cir. 1998) (affirming award of 38%); *Kirchoff v. Flynn*, 786 F.2d
320, 323 (7th Cir. 1986) (finding 40% to be "the customary fee in tort litigation"); *Retsky
Family Ltd. P'ship v. Price Waterhouse, LLP*, No. 97-7694, 2001 WL 1568856, at *4 (N.D. Ill.
Dec. 10, 2001) (customary contingent fee is "between 33 1/3% and 40%"); *Waters v. Int'l
Precious Metals Corp.*, 190 F.3d 1291, 1292-98 (11th Cir. 1999) (affirming award of 33 1/3% of
a $40 million settlement fund); *Allapattah*, 454 F. Supp. 2d 1185 (awarding fees of 31 1/3% of
$1.06 billion settlement fund); *In re: Terazosin Hydrochloride Antitrust Litig.*, No. 99–1317–
MDL–Seitz (S.D. Fla. April 19, 2005) (awarding fees of 33 1/3% of settlement fund of over $30
million); *In re: Managed Care Litig. v. Aetna*, No. 1334, 2003 WL 22850070 (S.D. Fla. Oct. 24,

2003) (awarding fees and costs of 35.5% of settlement fund of $100 million); *Gutter v. E.I. Dupont De Nemours & Co.*, No. 95–2152–Civ–Gold (S.D. Fla. May 30, 2003) (awarding fees of 33 1/3% of settlement fund of $77.5 million). And it is nearly the same amount that this Court awarded in applying the common fund methodology to a pair of Class Counsel's prior consumer class cases. *See Violette, et al. v. P.A. Days, Inc., et al.*, No. 2:01-cv-1254 (awarding fees of 30% in two class settlements) (S.D. Oh. March 16, 2004).

Importantly, this analysis does not differ when limited to TCPA class actions. *See, e.g., Soto v. The Gallup Org.*, No. 13-cv-61747, Doc. No. 95 (S.D. Fla. Nov. 24, 2015) (awarding a fee of 33 1/3%, inclusive of costs); *Guarisma v. ADCAHB Med. Coverages, Inc.*, No. 13-cv-21016, Doc. 95 (S.D. Fla. June 24, 2015) (awarding a fee of 33 1/3%, plus costs).[3] Class Counsel's request, therefore, comports with customary fee awards in similar cases.

### C. Additional factors support Class Counsel's request for an award of attorneys' fees.

"Attorneys who undertake the risk to vindicate legal rights that may otherwise go unredressed function as 'private attorneys general.'" *Allapattah,* 454 F. Supp. 2d at 1217. This is particularly important here, where, as previously noted, a statute that does not include a fee-shifting provision often results in damages that are too small to incentivize individual actions.

---

[3] *See also, e.g., Ikuseghan v. Multicare Health Sys.*, No. C14-5539, 2016 WL 4363198, at *2 (W.D. Wash. Aug. 16, 2016) (awarding 30%, plus costs); *Prater v. Medicredit, Inc.*, No. 4:14-CV-00159-ERW, 2015 WL 8331602, at *3 (E.D. Mo. Dec. 7, 2015) (awarding 33 1/3%, plus costs); *Allen v. JPMorgan Chase Bank, N.A.*, No. 13-cv-8285, Doc. 93 (N.D. Ill. Oct. 21, 2015) (awarding 33%, inclusive of costs); *Hageman v. AT&T Mobility LLC, et al.*, No. 1:13-cv-50, Doc. 68 (D. Mont. Feb. 11, 2015) (awarding 33%, inclusive of costs); *Vendervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (awarding 33%); *Martin v. Dun & Bradstreet, Inc., et al*, No. 1:12-cv-00215, Doc. 63 (N.D. Ill. Jan. 16, 2014) (awarding more than 33 1/3%); *Cummings v Sallie Mae*, No. 1:12-cv-9984, Doc. 91 (N.D. Ill. May 30, 2014) (awarding 33%, inclusive of costs); *Hanley v. Fifth Third Bank*, No. 1:12-cv-01612, Doc. 86 (N.D. Ill. Dec. 23, 2013) (awarding 33%, inclusive of costs); *Desai v. ADT Sec. Servs., Inc.*, No. 1:11-cv- 1925, Doc. 243 (N.D. Ill. June 21, 2013) (awarding 33%, inclusive of costs); *Locklear Elec., Inc. v. Norma L. Lay*, No. 3:09-cv-00531, Doc. 67 (S.D. Ill. Sept. 8, 2010) (awarding 33 1/3%, plus costs); *CE Design Ltd. v. Cy's Crab House N., Inc.*, No. 1:07-cv-5456, Doc. 424 (N.D. Ill. Oct. 21, 2011) (awarding 33%, plus costs); *Holtzman v. CCH*, No. 1:07-cv-7033, Doc. 33 (N.D. Ill. Sept. 30, 2009) (awarding 33%, inclusive of costs).

And given such a circumstance, "courts treat successfully fulfilling [the private attorney general role] as a … factor when awarding class counsel attorneys' fees." *Id.* (citing *Ressler*, 149 F.R.D. at 657 (noting that when class counsel act as private attorneys general, "public policy favors the granting of counsel fees sufficient to reward counsel for bringing these actions and to encourage them to bring additional such actions")).

The public policy fostered by the private attorney general role is, however, frustrated where a large defendant has the ability to overwhelm, for example, the small-firm plaintiff lawyers who typically represent consumers in actions under the TCPA. This is a reality that results from the fact that, as noted above, Class Counsel were required to risk a very significant amount of time, over the course of nearly two years, as well as out-of-pocket costs and expenses, to reach the result obtained here. And "[u]nless that risk is compensated with a commensurate reward, few firms, no matter how large or well financed, will have any incentive to represent the small stake holders in class actions against corporate America, no matter how worthy the cause or wrongful the defendant's conduct." *Allapattah*, 454 F. Supp. 2d at 1217.

Accordingly, a contingent attorneys' fee award that amounts to 33 1/3% or more of the common fund is appropriate where "absent an award of [such fees] … the entire purpose and function of class litigation under Rule 23 of the Federal Rules of Civil Procedure will be undermined and subverted to the interests of those lawyers who would prefer to take minor sums to serve their own self-interest rather than obtaining real justice on behalf of their injured clients." *Id.* at 1217-18 (citing John J. Coffee, Jr., *Rescuing the Private Attorney General: Why the Model of the Lawyer as Bounty Hunter is Not Working*, Maryland Law Review, 216, 225-26 (1983) (the private attorney general provides an important mechanism "to enforce the federal antitrust and securities laws, to challenge corporate self-dealing in derivative actions, and to protect a host of other statutory policies," but in the absence of appropriate incentive structures,

- 17 -

"litigated judgments are few, cheap settlements are common, and … the private watchdog can be bought off by tossing him the juicy bone of a higher-than-ordinary fee award in return for his acceptance of an inadequate settlement")).

With this is mind, and considering the unique circumstances of this matter—the lack of incentive for aggrieved consumers to bring individual suits—Class Counsel's request for attorneys' fees is supported by the economics involved in litigating this matter.

### D. This Court should approve Class Counsel's request for reimbursement of costs.

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of … reasonable litigation expenses from that fund." *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 519 (W.D. Pa. 2003). Here, Class Counsel incurred reasonable costs and expenses in connection with this matter, including expert costs, travel expenses, mediation costs, filing and *pro hac vice* fees, and other necessary expenses. Importantly, the categories of expenses for which Class Counsel seek reimbursement are the type of expenses routinely charged to paying clients in the marketplace and, therefore, are properly reimbursed under Rule 23. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (awarding as reasonable and necessary, reimbursement for "1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees"); *see also* Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and *nontaxable* costs that are authorized by law or by the parties' agreement.") (emphasis added).

Class Counsel seek reimbursement of out-of-pocket litigation expenses, totaling $37,059.65, which primarily consisted of expert fees Plaintiff's counsel incurred to analyze calling data, identify class members, and determine the number of violations. The remaining

amount is attributable to general litigation expenses such as travel and mediation expenses. These out-of-pocket costs were necessary and reasonable to secure the resolution of this litigation and should be recouped.

      **E.**    **The incentive award to Plaintiff should be approved.**

The Sixth Circuit has held that "[i]ncentive awards are typically awards to class representatives for their often extensive involvement with a lawsuit," noting that "[n]umerous courts have authorized incentive awards." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003).

"Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009); *see also Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) ("[Courts] routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."); *Allapattah*, 454 F. Supp. 2d at 1218 ("Incentive awards are not uncommon in class litigation where, as here, a common fund has been created for the benefit of the class."). These awards "serve an important function in promoting class action settlements." *Sheppard v. Cons. Edison Co. of N.Y., Inc.*, No. 94-CV-0403(JG), 2002 U.S. Dist. LEXIS 16314, at *16 (E.D.N.Y. Aug. 1, 2002).

Here, Ms. Evans took steps to protect the interests of the class and spent a considerable amount of time pursuing the claims underlying this matter. To start, Ms. Evans' initial decision to pursue this case as a class action, and not simply seek her individual damages, directly benefited the class. What's more, as there is no other class representative in this matter, without Ms. Evans, the common fund established here might never have come to be. Accordingly, Class Counsel requests that the Court approve the requested incentive award of $10,000.

Class Counsel's request for an incentive award to Ms. Evans in the amount of $10,000 is in line with incentive awards that courts have approved in comparable TCPA matters, and is in fact

on the lower end. *See, e.g., Jones v. I.Q. Data Int'l, Inc.*, No. 1:14-CV- 00130-PJK, 2015 WL 5704016, at *2 (D.N.M. Sept. 23, 2015) ($20,000 incentive award from a $1 million common fund); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-CV-4462, 2015 WL 1399367, at *6 (N.D. Ill. Mar. 23, 2015) (collecting cases and approving a $25,000 service award to TCPA class representative); *Ritchie v. Van Ru Credit Corp.*, No. CV-12-1714-PHX-SMM, 2014 WL 956131, at *5 (D. Ariz. Mar. 12, 2014) ($12,000 incentive award from a $2.3 million common fund); *Martin v. Dun & Bradstreet, Inc.*, No. 1:12–cv–215, 2014 WL 9913504, at *3 (N.D. Ill. Jan. 16, 2014) (approving a $20,000 service award to a TCPA class representative).

## IV.    CONCLUSION

For the reasons set forth above and the entire record in this litigation, Class Counsel respectfully request that when resolving Plaintiff's Motion for Final Approval, scheduled for hearing on May 21, 2019, that the Court award Class Counsel $2,000,000 in attorneys' fees, plus $37,059.65 as reimbursement of litigation expenses, and $10,000 as a class representative award to Ms. Evans.

Respectfully submitted,

**/s/ Brian K. Murphy**
Brian K. Murphy (0070654), Trial Attorney
James B. Hadden (0059315)
Jonathan P. Misny (0090673)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: 614.488.0400
Facsimile: 614.488.0401
E-mail: murphy@mmmb.com
          hadden@mmmb.com
          misny@mmmb.com

Edward A. Broderick (admitted pro hac vice)
Broderick Law, P.C.
99 High St., Suite 304
Boston, MA 02110
(617) 738-7080
ted@broderick-law.com

Anthony I. Paronich (admitted pro hac vice)
anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(617) 485-0018

Samuel J. Strauss (admitted pro hac vice)
Turke & Strauss LLP
613 Williamson Street, Suite 201
Madison, WI 53703
Telephone: 608.237.1775
E-mail: Sam@turkestrauss.com

Matthew P. McCue (admitted *pro hac vice*)
Law Office of Matthew P. McCue
1 South Avenue, Third Floor
Natick, MA 01760
Telephone: 508.655.1415
E-mail: mmccue@massattorneys.net

*Counsel for Plaintiff*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on [date], the foregoing was filed using the CM/ECF system, which will automatically provide notice all counsel of record.

<u>**/s/ Brian K. Murphy**          </u>
Brian K. Murphy