IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KAREN EVANS, on behalf of herself and others similarly situated, | : | Case No. 2:17-cv-515 |
| Plaintiff, | : : : | |
| v. | : : | Judge Edmund A. Sargus |
| AMERICAN POWER & GAS, LLC, CONSUMER SALES SOLUTIONS, LLC | : : : | Magistrate Judge Elizabeth Preston Deavers |
| Defendants. | : | |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM IN SUPPORT**

**I.     INTRODUCTION**

Plaintiff, Karen Evans ("Plaintiff" or "the Class Representative"), along with the defendants, American Power & Gas, LLC ("AP&G") and Consumer Sales Solutions, LLC ("CSS") (collectively referred to as the "Defendants" and with Plaintiff referred to as "the Parties"), reached a class action settlement of this matter (the "Settlement") for which this Court granted preliminary approval on December 14, 2018.[1] (Dkt. 58). As instructed by the Court's Preliminary Approval Order, KCC as Settlement Administrator sent the notice required by the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"), to the appropriate Federal and State officials, mailed the approved form of notice to potential members of the class, created a case specific website, and processed claims and the single request for exclusion from the class. (Declaration of Derek Smith – Settlement Administrator, attached hereto as Exhibit 1, ¶¶ 3-15.) Class Counsel additionally filed Plaintiff's Motion for Award of Attorneys' Fees, Expenses and Class Representative Award on March 19, 2019. (Dkt. 65.) Notably, no objections were

---

[1] Defendants do not oppose the relief requested in this Motion insofar as it supports the proposed settlement. Defendants do not concede or admit Plaintiff's assertions.

- 1 -

received to any aspect of the Settlement, including Plaintiff's Motion for Award of Attorneys' Fees, Expense and Class Representative Award, and only one request for exclusion was received. (*Id.* at ¶ 14.)

The Settlement was reached by counsel with a keen understanding of the merits of the claim and extensive experience in actions brought under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. The parties negotiated the Settlement with the assistance of two highly skilled and experienced mediators, which included the exchange of detailed mediation statements. The relief provided meets the applicable standards of fairness when taking into consideration the nature of Plaintiff's claims and the risks inherent in class litigation. Accordingly, Plaintiff respectfully requests that the Court: (1) grant final approval of the Settlement; (2) certify the proposed Settlement Class; (3) award Class Counsel their attorneys' fees and expenses as requested in Plaintiff's Motion for Award of Attorneys' Fees, Expenses and Class Representative Award; and 4) award the Class Representative $10,000 for her service to the Settlement Class. A proposed Final Approval Order is attached as Exhibit 2 and has been lodged with the Court.

## II. NATURE AND BACKGROUND OF THE CASE

This case rests on alleged violations of the TCPA, which prohibits, *inter alia*, initiating any telephone solicitation to a cell phone using an ATDS or an artificial or prerecorded voice. *See* 47 U.S.C. § 227(b). Plaintiff is an individual residing in Ohio who alleges her cellular telephone number has been called with unsolicited messages for years. On June 14, 2017, Plaintiff filed a putative class action lawsuit against AP Gas & Electric (OH), LLC, AP Gas & Electric (TX), LLC, and AP Holdings, LLC. On August 18, 2017, Plaintiff filed a First Amended Complaint in the action naming AP&G and CSS as defendants in the action and also filed a notice of voluntarily dismissal without prejudice as to the previously named defendants.

On October 3, 2017, the Defendants filed answers to the First Amended Complaint in the action, denying any and all liability to Plaintiff and the putative class and asserting various affirmative defenses.

Between October 2017 and May 2018, the Parties engaged in discovery and other litigation relating to class certification and other issues. During discovery, the parties exchanged documents relating to the dialing system used to make the calls to putative class members, the relationship between the Defendants, the Defendants' calling practices, and the nature and recipients of the challenged call campaigns of the Defendants. The Plaintiff also retained and produced an expert report from Mr. Jeffrey Hansen to opine that the dialing system used by the Defendants is an ATDS, as defined by the TCPA.

Between May 22, 2018 and August 14, 2018, the Parties engaged in extensive settlement negotiations, including a first day-long mediation session with Peter J. Grilli, Esq. on May 22, 2018 and a second on August 14, 2018 the Honorable Morton Denlow (Ret.) of JAMS in Chicago, Illinois, which eventually culminated in the Settlement Agreement before this Court.

### III. THE PROPOSED SETTLEMENT

#### A. THE SETTLEMENT CLASS

The proposed Settlement would establish a Settlement Class for settlement purposes only, defined as:

> All persons in the United States who were the users or subscribers of a cellular telephone number identified on the Class Phone Number List to which the Defendants, themselves or through a third party, made a telephone call using the ViciDial technology between June 14, 2013 and August 31, 2018.
>
> Plaintiff and the Defendant Parties agree that the Class Members include only those users or subscribers associated with the 313,285 unique cellular telephone numbers identified on the Class Phone Number List.

(Agreement, Dkt. 57-1, ¶ 1.37.)

B.   **SETTLEMENT RELIEF**

1.   **Class Member Relief: Settlement Fund**

The proposed Settlement establishes a non-reversionary $6,000,000 Settlement Fund, which will exclusively be used to pay: (1) cash settlement awards to Settlement Class Members; (2) Settlement Administration Expenses; (3) court-approved attorneys' fees of up to one-third of the total amount of the Settlement Fund; (4) Plaintiff's out of pocket expenses not to exceed $37,059.65; and (4) a court-approved incentive award to the Class Representative of up to $10,000.

Each of the 10,016 Settlement Class Members that submitted a valid claim shall be entitled to receive an equal *pro rata* amount of the Settlement Fund after all Settlement Administrative Expenses, Incentive Awards, and Fee awards are paid out of the Settlement Fund. (*Id.* ¶ 3.08.) If all the attorneys' fees, expenses, incentive award and Settlement Administration Expenses are approved as requested, Plaintiff's counsel estimate that the average Settlement Class Member payment would be approximately $395, which exceeds the estimate provided to Settlement Class Members in the Notice. (Smith Declaration, ¶ 15.) The Settlement provides for a potential second distribution for any funds remaining due to uncashed settlement distribution checks to those Settlement Class Members that cashed their first distribution checks, to the extent administratively feasible. (Dkt. 57-1, ¶ 3.09.)

2.   **Class Representative Incentive Award**

If approved by the Court, the Plaintiff will receive an incentive award of $10,000 from the Settlement Fund. (Dkt. 57-1, ¶ 3.08.) This award will compensate Plaintiff for her time and effort and for the risk she undertook in prosecuting this case.

3.   **Attorneys' Fees and Costs**

If the Settlement receives final approval, Plaintiff's counsel will receive one third of the Settlement Fund ($2,000,000) in addition to out of pocket expenses of $37,059.65. (*Id.* ¶ 2.30.)

As Plaintiff's counsel addressed in their fee application, an award of attorneys' fees and costs will compensate Plaintiff's counsel for their efforts on behalf of the class. (Dkt. 65.) Plaintiff's proposed attorney fee award and expenses were plainly disclosed to the Settlement Class in the proposed notice, and no objections were lodged. The proposed fee award is wholly consistent with other cases. (*Id.* at 15-16.)

### 4. Remaining Funds

Any amount remaining in the Settlement Fund after paying all approved Claim Forms, Settlement Administration Expenses, and any Fee Award and Incentive Award will be distributed to a Court-approved *cy pres* recipient. The Court appointed Ohio Legal Aid as the *cy pres* designee. This will only include the amount remaining from uncashed checks, to the extent further distribution to the Settlement Class is not administratively feasible.

### C. NOTICE AND SETTLEMENT ADMINISTRATION

All Settlement Administration Expenses will be exclusively paid from the Settlement Fund. (Dkt. 57-1, ¶ 1.33.) The Court appointed the nationally-recognized class action administration firm KCC LLC ("KCC") to be the Settlement Administrator. (Dkt. 58, ¶ 5.) The Settlement Administrator's duties included: (1) sending the Class Notice to the Settlement Class pursuant to the Settlement; (2) responding to inquiries regarding the settlement process from persons in the Settlement Class; (3) processing and evaluating Claim Forms, Requests for Exclusion, and objections; and (4) issuing Benefits Checks and Cash Benefits. KCC has completed its notice and claims administration obligations. (Smith Declaration, ¶¶ 2-16.)

### D. OPT-OUT AND OBJECTION PROCEDURES

Persons in the Settlement Class had the opportunity to exclude themselves from the Settlement or object to its approval. (Dkt. 57-1, ¶¶ 2.09, 2.15.) The procedures and deadlines for filing Requests for Exclusion and objections were conspicuously listed in the Class Notice

and on the Settlement Website. (*See id.* at Exs. B-C.) That only one Settlement Class Member opted out of the Settlement and none objected weighs in favor of approval.

E. **RELEASE**

The release is appropriately tailored to this case involving alleged violations similar to those alleged and is limited to those Settlement Class Members identified in the Class List generated from Defendants' records. In exchange for settlement benefits, all but one Settlement Class Member (who timely opted out) will release Defendants from any and all claims against the Released Parties, arising out of, among other things, Defendants' automated calling practices using the ViciDial technology. (*Id.*, ¶¶ 4.01-4.03.)

IV. **THE SETTLEMENT WARRANTS FINAL APPROVAL**

As a matter of public policy, settlement is a strongly favored method for resolving disputes. This is particularly true in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of prolonged litigation. *See Rankin v. Rots*, No. 02-CV-71045, 2006 U.S. Dist. LEXIS 45706, at *8-*9 (E.D. Mich. June 28, 2006) ("[T]he Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation."); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 246 (S.D. Ohio 1991) ("The law generally favors and encourages the settlement of class actions.").

Federal Rule of Civil Procedure 23(e)(1) requires court approval of any settlement of a certified class action. The procedure for approving a class action settlement includes three steps: (1) the court preliminarily approves the settlement; (2) the members of the class then are given notice of the settlement; and (3) the court then holds a hearing to determine whether the settlement is fair, reasonable, and adequate. *See Tenn. Ass'n of Health Maint. Orgs., Inc. v.*

*Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001); *Williams v. Vukovich*, 720 F.2d 909, 921-22 (6th Cir. 1983). With the recent amendment of Rule 23, the Court is additionally required to specifically consider: whether the Representative Plaintiff and Class Counsel have adequately represented the Settlement Class in the proceeding to date; whether the proposed Settlement was negotiated at arm's-length; whether the proposed relief available to the Settlement Class appears to be adequate, taking into account the costs, risks, and delay of trial and appeal; the anticipated effectiveness of the proposed method for distributing the proposed relief available to the Settlement Class, including the proposed method of processing class-member claims; whether the terms of any proposed award of attorneys' fees, including timing of payment, are reasonable; and whether the proposed Settlement treats members of the Settlement Class equitably relative to each other. As set forth below, Plaintiff submits that all of the requirements of Amended Rule 23 are readily met here.

The Parties request that the Court grant final approval of the Settlement. Plaintiff submits that the proposed Settlement is fair, reasonable, and adequate as is evidenced by the fact that not a single class member objected to the Settlement, and only one requested to be excluded from the Settlement. *See* 5 James Wm. Moore, *Moore's Federal Practice* §23.83[1], at 23-336.2 to 23-339 (3d ed. 2002).

### A. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

Here, the Settlement was reached after hard-fought litigation and arduous settlement negotiations with the substantial assistance of Hon. Morton Denlow (Ret.). The Settlement provides an immediate and substantial benefit of $6,000,000 in cash for the benefit of the Class. Given the complexities of this litigation and the substantial risks of continued litigation, the Settlement represents a very good resolution and eliminates the risk that the Class might not

recover anything if the litigation were to continue. There is no question that the Settlement is within the range of what has been found fair, reasonable, and adequate.

### B. FACTORS CONSIDERED IN CONNECTION WITH APPROVAL OF CLASS ACTION SETTLEMENT SUPPORT GRANTING FINAL APPROVAL

Moreover, reference to certain of the factors considered by courts in connection with final approval of class action settlements lend support to the proposition that the Settlement is well within the range of possible approval. In determining whether a proposed settlement is fair, adequate, and reasonable, the Sixth Circuit and the district courts therein have established factors for a court to consider, including: (1) the plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the risk of fraud or collusion; (4) the stage of the proceedings and the amount of discovery completed; (5) the judgment of experienced trial counsel; (6) the nature of the negotiations; (7) the objections raised by the class members; and (8) the public interest. *Williams*, 720 F.2d at 921; *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1008 (S.D. Ohio 2001). Courts have emphasized that these factors should not be applied in a "formalistic" fashion. *Thompson v. Midwest Found. Indep. Physicians Ass'n*, 124 F.R.D. 154, 157 (S.D. Ohio 1988) ("A class action settlement cannot be measured precisely against any particular set of factors, however, and the court may be guided by other factors, 'the relevancy of which will vary from case to case.'") (citation omitted). These factors largely overlap with the additional requirements imposed by Amended Rule 23. The factors are evaluated below.

#### 1. The plaintiff's likelihood of ultimate success on the merits balanced against the amount and form of relief offered in the settlement

The initial factor that courts consider in reviewing a class action settlement is the likelihood of success on the merits balanced against the amount and form of relief offered in

settlement. *See Williams*, 720 F.2d at 922. While Plaintiff's counsel believes that the claims asserted in the litigation have merit, they recognize and acknowledge the expense, length, and uncertainty of continued proceedings necessary to prosecute the litigation against Defendants through summary judgment, trial, and appeals. Plaintiff's counsel also has taken into account the uncertain outcome and risk of any litigation, especially in complex actions such as this litigation, as well as the difficulties and delays inherent in such litigation. In addition, Plaintiff's counsel is mindful of the inherent problems of proof under, and possible defenses to, the violations asserted in the litigation. *See In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 373-74 (S.D. Ohio 2006) (exploring "the difficulty Plaintiffs would encounter in proving their claims, the substantial litigation expenses, and a possible delay in recovery due to the appellate process, provides justifications for th[e] Court's approval of the proposed Settlement"). Apart from the numerous affirmative defenses asserted in their Answer, Defendants consistently argued that the dialing system used did not qualify as an ATDS, particularly since the recent decision of the United States Court of Appeals for the District of Columbia in *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018) (overturning a 2015 Order from the FCC on the definition of an Automatic Telephone Dialing System). If the dialing system at issue is not determined to be an ATDS, the Plaintiff does not have a claim.

At least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons – Algonquin, Inc.*, No. 09-910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case—between $100 and $1,000 per violation—would not violate Defendant's due process rights …. Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC*

*v. Rice Fields*, No. 06-4968, 2007 WL 129052, at *3 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

At summary judgment and trial, many of the determinative issues would be subject to expert testimony. While Plaintiff had retained a highly qualified expert, there is no telling which expert's testimony the Court or jury would accept. *See Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 U.S. Dist. LEXIS 7829, at *6 (S.D. Ohio Jan. 26, 2011) ("Acceptance of expert testimony is always far from certain, no matter how qualified the expert, inevitably leading to a 'battle of the experts.' The Settlement Agreement reached by the parties avoids the risks attendant to this 'battle of the experts,' which could result in a ruling against Named Plaintiffs and the Settlement Class.").

### 2. The complexity, expense, and likely duration of the litigation

Litigation would be lengthy and expensive if this action were to proceed. Although the Parties have engaged in substantial discovery, extensive motion work, including finishing the briefing of class certification and motions for summary judgment, remain. Realistically, it could be more than a year before the case would proceed to trial. The appeals process may further delay any judgment in favor of Settlement Class Members. The Settlement avoids these risks and provides immediate and certain relief. *See, e.g.*, *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 318 (3d Cir. 1998) (settlement was favored where "the trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court"); *In re Enron Corp. Sec.*, 228 F.R.D. 541, 566 (S.D. Tex. 2005) ("The settlement at this point would save great expense and would give the Plaintiffs hard cash, a bird in the hand.").

### 3. The risk of fraud or collusion and the nature of negotiations

First, the terms of the Settlement are the product of extensive arm's-length negotiations between the parties, with the substantial assistance of Judge Denlow. Between May 22, 2018 and August 14, 2018, the Parties engaged in extensive settlement negotiations, including a day-long mediation session. During these negotiations, Plaintiff's counsel zealously advanced their position and were fully prepared to continue to litigate rather than accept a settlement that was not in the best interest of the Settlement Class. Defendants are represented by highly capable and experienced lawyers from a national law firm. Counsel for Defendants zealously represented Defendants during the settlement negotiations and throughout the litigation. The Settlement was reached only after extensive arm's-length negotiations by experienced counsel on both sides, each with a well-developed understanding of the strengths and weaknesses of each party's respective claims and defenses. Indeed, Plaintiff's counsel carefully considered and evaluated a number of factors, including the relevant legal authorities and evidence pertaining to the claims asserted against Defendants, the likelihood of prevailing on these claims, the risk, expense, and duration of continued litigation, and any appeals and subsequent proceedings. After considering these factors, Plaintiff's counsel reasonably concluded that the Settlement is not only fair, reasonable, and adequate but is a very good result for the Settlement Class.

### 4. The stage of the proceedings and the amount of discovery completed

Additionally, the stage of the proceedings supports approval of the Settlement. *Telectronics*, 137 F. Supp. 2d at 1015. By the time the Settlement was reached, Plaintiff's counsel had sufficient knowledge and a significant understanding of the merits of the claims alleged in the litigation and the defenses that would be asserted by Defendants to intelligently determine that the settlement is in the best interest of the Settlement Class. Here, fact discovery was nearly complete. The Plaintiff had retained an expert and provided a report. Plaintiff and

her counsel's vigorous representation of the putative class readily satisfies the requirement of Amended Rule 23(e) of adequate representation of the proposed Settlement Class.

In addition, the Parties participated in an arm's-length mediation with Judge Denlow where the strengths and weaknesses of the claims asserted were fully vetted. Prior to the mediations, the Parties exchanged detailed mediation statements which further highlighted the factual and legal issues in dispute. The "arm's-length" negotiation requirement of Amended Rule 23(e) is also satisfied.

### 5. The judgment of experienced trial counsel

Plaintiff's counsel has significant experience and expertise in TCPA and other complex class action litigation and has negotiated numerous other substantial class action settlements throughout the country, and they support the Settlement. *See* Declarations of Brian Murphy, Edward A. Broderick, Matthew P. McCue, and Samuel Strauss, attached as Exhibits 3 to 6, respectively. The Sixth Circuit has determined that a court should "defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs." *See Williams*, 720 F.2d at 922-23; *Telectronics*, 137 F. Supp. 2d at 1015 ("The Court heeds the recommendation of such experienced, professional, and competent Counsel."); *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532 (E.D. Ky. 2010) ("In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference."), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011). Brooks R. Brown, counsel for Defendant AP&G, offers a separate Declaration Concerning Class Settlement, attesting to the hard-fought nature of the litigation and arm's-length negotiations that resulted in the Settlement before the Court. (*See* Brooks Declaration, attached as Exhibit 7.)

Based on their thorough evaluation, Plaintiff's counsel believes the benefits of Settlement merit approval, particularly when weighed against the expense, risks, and uncertainty of continued litigation. While there is always a chance of a greater recovery down the road, such a result is by no means guaranteed, and any such expectation must be tempered by a recognition that any compromise involves concessions on the part of all Parties. Indeed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citations omitted). As the Fifth Circuit noted in *Cotton v. Hinton*, "[t]he trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained ….'" 559 F.2d 1326, 1330 (5th Cir. 1977) (citation omitted).

In light of the risks of continued litigation laid out above, and the determination of experienced counsel that the Settlement represents an excellent result for the class, Plaintiff's counsel respectfully submit that the proposed Settlement meets the requirement of Amended Rule 23(e) that the proposed relief be found adequate, taking into account the costs, risks, and delay of trial and appeal.

## V. THE NOTICE AND FUND DISTRIBUTION PROGRAM WAS APPROPRIATE

Rule 23(e) governs notice requirements for settlements or "compromises" in class actions. The Rule provides that a class action shall not be dismissed or compromised without the approval of the court and that notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs. Fed. R. Civ. P. 23(e). In addition, the rule provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).

Here, the Parties negotiated the content of the Notice of Pendency and Proposed Settlement of Class Action (the "Notice") that was disseminated to all persons who fall within the definition of the class and whose names and addresses can be identified. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). According to the Manual for Complex Litigation, § 21.312, a settlement notice should do the following:

- Define the class;

- Describe clearly the options open to the class members and the deadlines for taking action;

- Describe the essential terms of the proposed settlement;

- Disclose any special benefits provided to the class representatives;

- Indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;

- Explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations;

- Provide information that will enable class members to calculate or at least estimate their individual recoveries; and

- Prominently display the address and phone number of class counsel and the procedures for making inquiries.

The Class Notice, attached as Exhibits B and C to the Settlement Agreement, satisfied all of the above criteria. The Notice described the nature of the litigation, set forth the definition of the class, stated the class claims, and disclosed the right of Class Members to exclude themselves from the Class, as well as the deadline and procedure for doing so and warned of the binding effect of the settlement approval proceedings on Class Members who do not exclude themselves. In addition, the Notice described the Settlement, set forth the Settlement Fund, explained the

distribution and claims process, stated the Parties' disagreement over damages and other issues, and set out the amount of attorneys' fees and expenses that Plaintiff's counsel would seek in connection with final settlement approval. The Notice also provided contact information for Plaintiff's counsel and the Claims Administrator, and summarized the reasons the Parties proposed the Settlement. The Notice also disclosed the date, time, and place of the formal fairness hearing, and the procedures for objecting to the Settlement and appearing at the hearing. The contents of the Notice, therefore, satisfied all applicable requirements. The Settlement Agreement calls for distribution of Benefit Checks within 30 business days after the Final Approval Date. (Doc. 57-1, ¶ 3.03.)

All 10,016 Settlement Class Members that submitted timely and valid claim forms will be entitled to an equal payment made by the Settlement Administrator experienced and proficient in administering class settlements, thereby satisfying the twin requirements of Amended Rule 23(e) that the method for distribution of payments be effective, and that the proposed Settlement treat Settlement Class Members equitably relative to each other.

## VI. CONCLUSION

For the reasons set forth above and the entire record in this litigation, the Settlement warrants this Court's final approval, and Plaintiff's counsel respectfully requests that the motion be granted.

Respectfully submitted,

**/s/ Brian K. Murphy**
Brian K. Murphy (0070654), Trial Attorney
James B. Hadden (0059315)
Jonathan P. Misny (0090673)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: 614.488.0400
Facsimile: 614.488.0401
E-mail: murphy@mmmb.com
    hadden@mmmb.com
    misny@mmmb.com

Edward A. Broderick (admitted *pro hac vice*)
Broderick Law P.C.
99 High St., Suite 304
Boston, MA 02110
(508) 221-1510
ted@broderick-law.com

Anthony I. Paronich (admitted *pro hac vice*)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

Samuel J. Strauss (admitted *pro hac vice*)
Turke & Strauss LLP
613 Williamson Street, Suite 201
Madison, WI 53703
Telephone: 608.237.1775
Facsimile: 608.509.4423
E-mail: Sam@turkestrauss.com

Matthew P. McCue (admitted *pro hac vice*)
Law Office of Matthew P. McCue
1 South Avenue, Third Floor
Natick, MA 01760
Telephone: 508.655.1415
Facsimile: 508.319.3077
E-mail: mmccue@massattorneys.net

*Counsel for Plaintiff*

CERTIFICATE OF SERVICE

      I, hereby certify that on April 16, 2019, I caused the foregoing to be filed via the Court CM/ECF filing system which will effect service on all counsel of record.

                                        **/s/ Brian K. Murphy**
                                        Brian K. Murphy